UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

August 12, 2011

Stephen F. Shea, Esq.
Elkind & Shea
801 Roeder Road, Ste. 550
Silver Spring, MD 20910

Alex S. Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Millicent Appiah v. Michael J. Astrue, Commissioner of Social Security, PWG-09-1812**

Dear Counsel:

Pending, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Appiah's claims for Disability Insurance Income ("DIB") and Supplemental Security Income ("SSI"). (ECF Nos. 8, 15, 21). Plaintiff also filed a Response to Defendant's Motion (ECF No. 28).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  A hearing is unnecessary.  Local Rule 105.6.  For the reasons that follow, this Court DENIES the Commissioner's Motion, and GRANTS the Plaintiff's Alternative Motion for Remand.

Ms. Appiah ("Claimant") applied for DIB and SSI on February 16, 2006, alleging that she was disabled due to depression, borderline intellectual functioning, a learning disorder, and an injury to her lower back. (Tr. 248).  Her claims were denied initially and upon reconsideration. (Tr. 22-29). After a hearing on March 14, 2008, before the Honorable Drew A. Swank ("ALJ") the ALJ denied Ms. Appiah's claims and concluded in a decision dated April 18, 2008, that her organic mental impairment, depression, and personality disorder were "severe" impairments

as defined in the Regulations, but they did not meet, or medically equal, any of the Listed Impairments. (Tr. 14). The ALJ also found that Claimant retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels and, with regard to her nonxertional limitations that: she could understand, remember, and carry out simple, unskilled tasks that do not require more than limited contact.(Tr. 23). Based on her RFC, the ALJ found that Claimant could not perform any of her past relevant work ("PRW"). (Tr. 19). Next, the ALJ concluded that her ability to perform work at all exertional levels had been "compromised by nonexertional limitations but that those limitations had little or no effect on her ability to perform unskilled work. Accordingly the ALJ concluded that Claimant was not disabled under the framework of section 204.00 of the Medical Vocational Guidelines.(Tr. 19). On May 12, 2009, the Appeals Council denied Ms. Appiah's request for review, making her case ready for judicial review. (Tr. 2-5).

Claimant argues, *inter alia,* that the ALJ erred in determining her RFC, and in relying exclusively on the GRIDS to find her not disabled. As explained below, I agree with Claimant's arguments, conclude that the ALJ's decision is not supported by substantial evidence, and therefore DENY the Commissioner's Motion and GRANT the Plaintiff's Alternative Motion for Remand.

The ALJ erred at steps four and five of the sequential evaluation in evaluating Ms. Appiah's mental RFC and in relying on the GRIDS.[1] The ALJ failed to discuss whether he considered

---

[1] The ALJ also erred at step two when considering all of Ms. Appiah's mental impairments. The parties do not dispute that Ms. Appiah suffers from an organic mental disorder classified under Listing 12.02, an affective disorder, classified under Listing 12.04, and a personality disorder classified under listing 12.08, and that they are severe. However, there also is evidence--not discussed by the ALJ other than in a summary fashion-- that Ms. Appiah has an anxiety disorder, classified under Listing 12.06, and that it is severe, as defined in the Regulations. On October June 14, 2006, Dr. Dale Peterson completed a Psychiatric Review Technique Form ("PRTF") and stated *inter alia* that Claimant was diagnosed with post traumatic stress disorder ("PTSD"). Dr. Peterson stated that Claimant had "moderate" limitations in her abilities: to maintain attention and concentration for extended periods; work

2

properly all of the evidence in determining Claimant's RFC. The ALJ's RFC finding was:

> "The Claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand remember and carry out simple, unskilled tasks that does not [sic] requires no more than limited contact with the general public." (Tr. 16).

The ALJ documented his specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph(c) of §§416.920a, 404.1520a[3].(Tr. 15-16). However the ALJ's discussion of Ms. Appiah's mental limitations at steps two and three was not an RFC assessment[4], and did not satisfy the

---

in coordination with or proximity to others without being distracted by them; **complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and interact appropriately with the general public**.(Tr. 18, 150-152)(emphasis added). The ALJ did not provide any explanation as to what evidence he ultimately relied upon and whether he determined that this additional mental impairment was or was not severe. This error is not *de minimus*. Errors such as those which occurred at step two in this case inevitably infect the ALJ's analysis at the subsequent steps. The Court cannot determine whether findings are supported by substantial evidence unless the agency clearly indicates the weight given all the relevant evidence. *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984) *see also* SSR 96-6p (1996 WL 374180), SSR 82-62.

---

[3] The ALJ found that Ms. Appiah had the following limitations: "moderately" limited in her activities of daily living; "moderately" limited in social functioning; "moderately" limited in ability to concentrate; and that she experienced "no" episodes of decompensation. (Tr. 15).

[4] The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "**An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work related capacities that may be affected by mental disorders when**

3

ALJ's duties at step 4 of the sequential evaluation. SSR 96-8p, in relevant part, states as follows:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria **are not an RFC assessment** but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. **The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF**. SSR 96-8p (1996 WL 374184, *4(S.S.A.)).(Emphasis added).

While, the ALJ cited the above cited language in his decision, he nevertheless failed to comply with it.(Tr. 16). The ALJ's RFC analysis did not include any of the required detailed findings such as those outlined by Dr. Peterson. See FN. 2 infra. Rather, the ALJ stated, in a conclusory fashion, that Ms. Appiah could perform "simple, unskilled tasks with no more than limited contact with the general public." This was not an adequate assessment. *Hilton v. Barnhart* 2006 WL 4046076 (D. Kan.) citing *Wiederholt v. Barnhart,* 121 Fed. Appx. 833 (10th Cir. 2005)(the relatively broad unspecified nature of the description "simple" and unskilled" does not adequately incorporate the more specific findings required).

The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p (1996 WL 374184, *7) (S.S.A.))(emphasis added). Since Dr. Peterson's report was not adequately discussed by the ALJ—including his finding that Claimant had PTSD- and since the ALJ did not perform the function-by-function assessment described in SSR 96-8p—I have no way of knowing whether the ALJ properly considered this evidence and

---

**your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment**." *See* 20 CFR Pt. 404, Subpt.P, App. 1 (emphasis added); *See also* SSR 96-8p (1996 WL 374184).

consequently whether this evidence supports, or conflicts with, the ALJ's finding regarding Ms. Appiah's RFC. All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment. SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A.)).

According to Social Security Ruling ("SSR") 96-8p, the mental activities required by competitive, remunerative, unskilled work include:

> Understanding, remembering and carrying out simple instructions.
> Making judgments that are commensurate with the functions of unskilled work-i.e., simple work related decisions.
> Responding appropriately to **supervision, co workers and usual work situations dealing with changes in the work setting**.

(SSR 96-8p 1996 WL 374184 at *6)(Emphasis added).

Another deficiency in the ALJ's decision is the failure to recognize that his reliance on the GRIDS to determine that Ms. Appiah was not disabled was improper. At step five in his GRID analysis, the ALJ stated that Ms. Appiah's:

> "ability to perform work at all exertional levels has been compromised by nonexertional limitations however, these limitations **have little or no effect on the occupational base of unskilled work.** A finding of not disabled is therefore appropriate under the framework of section 204.00 of the Medical Vocational Guidelines." (Tr. 19)(Emphasis added).

However the ALJ's decision conflicts with the Commissioner's own Rulings, specifically, SSR 85-15, which states:

> [W]here a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. **The basic mental demands of competitive, remunerative, unskilled work include the**

5

**abilities (on a sustained basis)** to understand, carry out, and remember simple instructions**; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting**. A substantial loss of ability to meet **any** of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.(emphasis added).

In this case, there is evidence which, as noted previously, was not adequately discussed by the ALJ which indicates Ms. Appiah is seriously limited in her ability to respond to co-workers and supervision, all of which are basic requirements of unskilled work according to SSR's 85-15 and 96-8p.

The GRIDS are dispositive of whether a claimant is disabled only when the claimant suffers from purely an exertional impairment *Gory v. Schweiker*, 712 F.2d 929, 930(4th Cir. 1983). In the case of a claimant who suffers from non-exertional impairments or a combination of exertion and non-exertional impairment that prevent him or her from working a full range of work at a given exertional level, the grids may be used only as a guide. *Id.* at 931. In such a case the Commissioner must establish through a vocational expert that jobs exist in the national economy which claimant can perform See *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989); 20 CFR §404.1569a.

Simply stated, it is not clear from his decision whether the ALJ properly evaluated all of Ms. Appiah's mental impairments at the second, fourth or fifth steps of the sequential evaluation. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review). Accordingly, I am unable to say that the ALJ's analysis with respect to Ms. Appiah's impairments is supported by substantial evidence and the case will be remanded. On remand the ALJ is to explain his or her reasons for making these determinations in sufficient detail for the Court to conduct meaningful review of these findings. See 20 CFR §416.920a(e)(2).

For the above reasons, the Commissioner's decision is reversed and the case is remanded for further proceedings in

accordance with the foregoing Memorandum.  A separate Order shall issue.


Dated:  8/12/11                       _____/s/_____
                                      Paul W. Grimm
                                      United States Magistrate Judge